**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

VICTOR VERNORD ROSE,           )
                               )
            Petitioner,   )
                               )
vs.                            )   Case No. CIV-10-370-JHP-KEW
                               )
MIKE MULLIN, WARDEN,           )
                               )
           Respondent.   )

## OPINION AND ORDER

Petitioner, Victor Vernord Rose, was convicted following a jury trial in the District Court of Carter County, Case No. CF-2004-863, of Count I: Grand Larceny in violation of OKLA. STAT. tit. 21, § 1701, and Count II: Fraudulent Use of a Credit Card in violation of OKLA. STAT. tit. 21, § 1550.29. In accordance with the jury's verdict, Petitioner was, on April 11, 2007 sentenced to twenty (20) years imprisonment on Count I and fifteen (15) years imprisonment on Count II. Said sentences were ordered to be served concurrently. On direct appeal, the Oklahoma Court of Criminal Appeals (hereinafter, "OCCA") summarily affirmed the Judgment and Sentence of the trial court. *Rose v. State*, No. F-2007-393, slip op. (Okla. Crim. App. April 21, 2009).[1] On December 21, 2009, the petitioner filed an application for post-conviction relief in the Carter County District Court. Said application was denied on January 4, 2010. Petitioner filed an appeal, which was denied by the OCCA in April, 2010.

---

[1] *See*, Dkt. # 10-3.

*Rose v. State*, No. PC-2010-47, slip op. (Okla. Crim. App. April 7, 2009). Petitioner now seeks relief from his state court convictions, pursuant to 28 U.S.C. § 2254.

## I. RECORDS REVIEWED

This Court has reviewed (1) the Petition for Writ of Habeas Corpus; (2) the Response to the Petition filed by the State of Oklahoma and attachments thereto; (3) Petitioner's Reply; and (4) the state court records, including the transcripts from the preliminary hearing, the jury trial and sentencing hearing. After a thorough review of the state court records transmitted to this court, the pleadings filed herein, and the law applicable to the facts of this case, the Court finds, for the reasons set out herein, Petitioner is not entitled to the relief requested.

## II. STATEMENT OF THE FACTS

On Friday, November 26, 2004, Mr. Rose and his co-defendant, Steven Montgomery, entered the local Rentway store in Ardmore, Oklahoma and asked for assistance in renting a television. An employee, Laquita Ellis - the victim in this case, had the defendant sit down at a table in the rear of the store to fill out a credit application. In the meantime, Mr. Montgomery asked Ms. Ellis for help at the front of the store. J.T.Tr., at pp. 59-61.

Chavez Prince, another employee at the store, noticed that the defendant kept hanging out around the doorway that led to the office. Mr. Prince testified that he twice told the defendant that he was not allowed to go back there, but he was unable to further observe the defendant because he had to help another customer. *Id*., at pp. 110-114.

Shortly thereafter, Mr. Rose told Montgomery that "We need to go, let's go." *Id.*, at p. 65. When Ms. Ellis inquired about the paperwork, the defendant said he would bring it

back later. *Id*. Ms. Ellis went to the back office to retrieve some medicine from her purse and realized her wallet was gone. In her wallet, Ms. Ellis testified she had her wedding ring set, her class ring, a pinkie ring and a gold chain with a drop on it. Ms. Ellis testified that her wedding ring set alone was worth $500 or more. Additionally, the wallet contained Ms. Ellis debit card. *Id*., at pp. 66-68. After searching the store and her car for her wallet, Ms. Ellis called the police and made a report that her wallet had been stolen. *Id.*, at p. 68.

On the following Monday, November 29, 2004, Ms. Ellis went to her bank to cancel her debit card. At that time, Ms. Ellis was notified that two transactions had occurred on her card since she had discovered it had been stolen. *Id*., at p. 69. One of these purchases was at Wal-Mart and the other was at Good Spirits.

Ms. Ellis advised the police of these purchases and Detective Jason Qualls with the Ardmore Police Department followed up with these two businesses regarding those purchases. While Wal-Mart had already taped over the video recording of the transaction, Good Spirits was able to recover video of the transaction involving Ms. Ellis' debit card. The videotape from Good Spirits revealed that the defendant used Ms. Ellis' debit card, approximately twenty-eight (28) minutes after leaving Rentway, to make a $29 purchase. *Id.*, at p. 70. Good Spirits provided Detective Qualls with a copy of the receipt, charging liquor to Ms. Ellis' card, signed by the defendant, as well as the videotape showing the defendant making the purchase. *Id*., at pp. 71, 84-84, and 122.

### III. PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises four (4) grounds for relief. Respondent filed a Response to the Petition by and through the Attorney General of the State of Oklahoma on December 15, 2010. Thereafter, on January 19, 2011, the petitioner filed a reply.

Petitioner claims the following errors entitle him to relief herein: (1) his convictions for grand larceny and fraudulent use of a debit card violates the double jeopardy clause; (2) there was insufficient evidence to prove his guilt beyond a reasonable doubt; (3) ineffective assistance of counsel; and (4) errors in the admission of evidence deprived him of a fundamentally fair trial, resulting in a denial of due process.

### IV. STANDARD OF REVIEW

Petitioner filed his petition herein on October 6, 2010. As a result, this case is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See *Lindh v. Murphy,* 521 U.S. 320, 326-327, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

The AEDPA delineates the circumstances under which a federal court may grant habeas relief. Under the AEDPA's provisions, this Court is precluded from granting habeas relief on any claim adjudicated on the merits by a state court

unless the adjudication of the claim—

>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 592 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court interpreted the above-quoted statute holding, in order for a petitioner to obtain federal habeas relief, the petitioner must first demonstrate that his case satisfies the conditions set by § 2254(d)(1). The starting point is to determine whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings, as opposed to the dicta, of the Supreme Court. *Marshall v. Rodgers*, — U.S. —, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540 (2013) and *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). *See also, House v. Hatch*, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If no clearly established federal law exists, this Court need not address whether the state court's decision was "contrary to" or involved an "unreasonable application" of such law. *Id.*, at 1018. Where, however, clearly established federal law exists, this Court must then consider whether the state court decision was "contrary to" or involved an "unreasonable application" of such law. *Id.*

A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court case law or "if the state confronts a set of facts that are materially indistinguishable from" a decision of the Supreme Court, but nonetheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (citing *Williams,* 529 U.S. at 405-406). When the state court applies the correct federal law to deny relief, the federal court can consider only whether the state court applied the federal law in an objectively reasonable manner. *See*, *Bell*

*v. Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002).

On the other hand, the "unreasonable application" provision is implicated when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1520. "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct.1933, 1939, 167 L.Ed.2d 836 (2007), *reh. denied*, 551 U.S. 1177, 128 S.Ct. 7, 168 L.Ed.2d 784 (2007). In *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), the Supreme Court reiterated two principles. First, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law" and; second, the AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.*, 130 S.Ct., at 1862 (citations omitted).

Moreover, the Supreme Court has made it clear that a state court is not required to cite Supreme Court caselaw, or even be aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8, 123 S.Ct. at 365. Additionally, the Supreme Court has recently held that "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). Accordingly, "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, at 1440 (footnote omitted).

## V. DOUBLE JEOPARDY

In his first ground for relief, the petitioner alleges he was twice put in jeopardy for the same crime and thereafter, punished twice for the same criminal conduct. Specifically, the petitioner states he was charged with grand larceny for allegedly stealing a wallet. The contents of the wallet included a debit card which was subsequently used by the petitioner. As a result, petitioner was also charged with fraudulent use of a debit card. Petitioner argues that the grand larceny was "one single act of theft in one single transaction." Thus, he claims his constitutional rights against double jeopardy were violated. He also asserts he received double punishment for a single criminal act.

Petitioner exhausted this issue by raising it on direct appeal before the OCCA. The Court adjudicated the claim on the merits finding: "Rose's convictions for grand larceny and fraudulent use of a credit card do not violate constitutional or statutory prohibitions against

double jeopardy or multiple punishment." *Rose v. State*, No. F-2007-393, slip op. (Okla. Crim. App. April 21, 2009).[2]

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. This amendment is intended to prevent a defendant from receiving successive punishments or being subjected to successive prosecutions for the same offense. *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court indicated "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (citing *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911). A review of the jury instructions given in this case establishes that the elements of the two offenses that petitioner was convicted of, grand larceny and fraudulent use of a debit card, require proof of different facts. Specifically, to be convicted of grand larceny, the jury had to be convinced beyond a reasonable doubt as to each element of the crime. These elements are the taking or carrying away of personal property of another whose value exceeds $500 by stealth and with the intent to permanently deprive the owner of the same. O.R. 94. To be convicted of fraudulent use of a debit card, on the other hand, the jury had to be convinced beyond a reasonable doubt that the defendant, with the intent to defraud, used for the purpose of obtaining goods or anything

---

[2]*See*, Dkt. # 10-3, at p. 2.

else of value a debit card taken from the person, possession, custody, or control of another without the cardholder's consent. O.R. 96. Clearly, each crime required proof of facts the other did not. The petitioner could not be convicted of fraudulent use of a debit card by simply stealing it. Rather, he was required to use the card to make a purchase. As a result, this Court finds petitioner has failed to establish that the ruling of the OCCA was contrary to or an unreasonable application of Supreme Court law. Accordingly, pursuant to 28 U.S.C. § 2254(d), the petitioner is not entitled to relief.

Petitioner's claim that he suffered double punishment in violation of Oklahoma law is not cognizable on federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)(emphasizing "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Rather, this Court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. *Id*. Accordingly, Petitioner's double punishment claim, based on Oklahoma law, is not cognizable herein and is, therefore, denied.

## VI.  SUFFICIENCY OF THE EVIDENCE

In his second ground for relief, the petitioner argues there was insufficient evidence to support his conviction for grand larceny. Specifically, the petitioner claims the State failed to prove the value of the property taken was over $500. Petitioner raised this issue on direct appeal. In denying relief on this issue, the OCCA held:

> In this instance, when the victim's testimony about the value of her stolen property is viewed in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that the value of the property

> was $500.00 or more. *See Fixico v. State*, 1987 OK CR 64, ¶ 8, 735 P.2d 580, 582 (holding that complaining witness's testimony of estimated fair market value of stolen property is competent evidence from which jury may conclude beyond a reasonable doubt that value of property exceeded grand larceny threshold because owner of property is familiar with its cost and use and is therefore qualified to comment on its fair market value). The evidence on this element of the offense is sufficient to support conviction. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204.

*Rose v. State*, No. F-2007-393, slip op. (Okla. Crim. App. April 21, 2009) at pp. 2-3. The OCCA went on to find that "[t]he victim testified unequivocally and without contradiction that the value of one of the stolen items was at least $500.00." *Id.*, at p. 3.

In *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the United States Supreme Court held in a federal habeas proceeding challenging the sufficiency of the evidence in a state trial that a reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Further, the Court indicated following conviction, a judicial review of the "evidence is to be considered in the light most favorable to the prosecution." *Id.* The opinion of the OCCA makes it clear that they applied the *Jackson* standard to the facts of this case.

Given the OCCA's merits adjudication of this claim, this Court's review is limited by the AEDPA to ascertaining whether the OCCA's application of *Jackson* was unreasonable. *Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009). Based upon the evidence at trial, this Court finds it was not. Furthermore, pursuant to 28 U.S.C. § 2254(e)(1), the

10

OCCA's findings of fact are entitled to a presumption of correctness and the petitioner has failed to rebut those findings by clear and convincing evidence. As a result, this Court finds the petitioner has failed to establish that the ruling of the OCCA was contrary to or an unreasonable application of Supreme Court law or that its decision was based on an unreasonable determination of the facts in light of the evidence. Accordingly, pursuant to 28 U.S.C. § 2254(d), the petitioner is not entitled to relief.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's third ground for relief asserts he was denied effective assistance of counsel in violation of the Fifth and Fourteenth Amendments to the United States Constitution. In support of this claim, the petitioner provides limited factual support, simply stating:

> Trial Counsel refused to call witnesses that were relevant to Petitioner (sic) defense. Trial counsel refused to allow the Petitioner to testify in his own defense when Petitioner told counsel he would like to testify in his own defense. Trail (sic) counsel failed to investigate the staleness of petitioner's prior convictions which were staled under the Oklahoma law, which was later used to enhance petitioner (sic) sentence. Petitioner sent serval (sic) letter's to his counsel requesting that he call his co-defendant as a witness. Trial counsel did not represent petitioner to the best of his professional ability.

Dkt. # 1, at p. 8.

Petitioner first raised these claims during his direct appeal. In considering these claims, the OCCA held:

> Trial counsel was not ineffective for: (1) failing to investigate the staleness and potential transactional linkage between Rose's six prior felony convictions that were all filed close in time; and (2) failing to produce evidence that the sentences for his six prior convictions "could" have been

discharged outside the ten year limit established by 21 O.S. 2001, § 51.2. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)(holding that to prevail on ineffectiveness claim, defendant must affirmatively show prejudice: i.e., show to a reasonable probability that, but for counsel's error, result of proceeding would have been different); *Berget v. State*, 1995 OK CR 66, ¶ 30, 907 P.2d 1078, 1086 (holding that unsubstantiated assertions, without more, are insufficient to support claim of ineffective assistance of counsel); *Hammer v. State*, 1988 OK CR 149, ¶ 10, 760 P.2d 200, 203 ("[t]he defendant has the burden of showing the crimes were all part of a single transaction or occurrence [and] [s]equential case numbers and judgments entered on the same day do not establish that the crimes arose out of a single occurrence").

Trial counsel was not ineffective for refusing to allow Rose to testify at trial. *Jones v. State*, 2006 OK CR 5, ¶ 85, 128 P.3d 521, 547 ("[b]ecause [defendant] has not offered any specific, convincing information as to why his decision [not to testify] was 'involuntary,' we cannot say that counsel was ineffective").

Trial counsel was not ineffective for failing to call witnesses that Rose contends would have provided exculpatory information. With one exception, Rose does not identify any of these witnesses, nor does he explain what exculpatory information they would provide. With regard to the unidentified witnesses, therefore, Rose presents nothing more than an unsubstantiated claim of error. Such a claim provides this Court with no basis for assessing the reasonableness of counsel's performance or the degree of prejudice, if any, resulting from the alleged deficient performance. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064 (requiring showing of deficient performance by counsel and that counsel's deficient performance prejudiced defense); *Berget v. State*, 1995 OK CR 66, ¶ 30, 907 P.2d 1078, 1086 (holding that unsubstantiated assertions, without more, are insufficient to support claim of ineffective assistance of counsel).

. . . . . Rose does identify one specific individual he claims his attorney should have called as a witness and asserts what he believes that witness would have said had he testified at trial. Specifically, Rose identifies his co-defendant Steven Montgomery as a witness and claims that Montgomery would "tell a total [sic] different story of what happen [sic]" and that Montgomery (1) "could" testify that he (Montgomery) was not at Good Spirits liquor store on the day of the fraudulent debit card purchase; and (2) "he [Montgomery] has known Marvelous Prince for over 10 years and Marvelous was not at the Rent store" . . . . . . . The relevance or exculpatory value of this

12

> proffered testimony is certainly not apparent on its face, and Rose offers no explanation of its relevance to any matter at issue. Thus, it is impossible to determine how Rose's defense was prejudiced without this testimony and, without a showing of prejudice, there is no viable claim of ineffective assistance. *See Strickland*, 466 U.S. at 693-94, 104 S.Ct. at 2067-68 (holding that to prevail on an ineffective assistance claim, defendant must, among other things, affirmatively prove prejudice from counsel's error: i.e., show to reasonable probability that, but for counsel's unprofessional errors, result of the proceeding would have been different).

*Rose v. State*, No. F-2007-393, slip op. (Okla. Crim. App. April 21, 2009) at pp. 5-7.

Petitioner's claim of ineffective assistance of counsel is governed by the familiar two-part test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the Court indicated that the defendant must establish that the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. In order to establish that counsel's performance was deficient, Petitioner must establish counsel made errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., 466 U.S. at 687, 104 S.Ct. at 2064. Second, the defendant must establish that the deficient performance prejudiced the defense. *Id.* Failure to establish either prong of the *Strickland* standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.*, 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in *Strickland*,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining

>   counsel's defense after it has proved unsuccessful, to conclude that a particular
>   act or omission of counsel was unreasonable.

*Id.*, 466 U.S. at 689, 104 S.Ct. at 2065. In order to establish prejudice in the guilt stage, the defendant has to show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068. In other words, deficient performance is prejudicial only where it is clear that "but for trial counsel's errors, there is a reasonable probability that the ultimate result would have been different," *Washington v. Johnson*, 90 F.3d 945, 953 (5th Cir. 1996), *cert. denied,* 520 U.S. 1122, 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); so that, the "confidence in the reliability of the verdict is undermined." *Id.*

Further, the Supreme Court has indicated that every effort must be made by a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 1065. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance. *Id.*

In making the showing required by *Strickland*, a convicted defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). He must also show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

U.S. at 694, S.Ct. at 2068. Conclusory allegations regarding counsel's alleged errors are simply insufficient to satisfy the requirements of *Strickland*. *United States v. Ray*, 931 F.2d 64 (10th Cir. 1991).[3] *See also*, *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (conclusory allegations cannot satisfy prejudice prong of *Strickland* test).

In this case, the petitioner does not identify any witnesses which counsel should have called or what testimony they could have provided that would have changed the outcome of his trial. Further, Petitioner does not even attempt to support his allegations with any evidence or particular information that he would have testified about or explain how it would have changed the outcome of his case. In light of the strong evidence of guilt which was presented to the jury, it is highly unlikely that anything the petitioner could have said would have changed the jury's verdict in this case. Thus, he has not established prejudice.

Additionally, while the petitioner claims his trial counsel failed to investigate the staleness of his prior convictions, the trial transcript establishes that counsel actually argued that the case numbers revealed they were sequential and, as a result, they might have stemmed from the same transaction. Morever, trial counsel objected to their admission on the grounds that the convictions had been discharged outside of the previous ten (10) years. J.T.Tr. at pp. 172-174. The trial court disagreed holding that all of the listed prior felony convictions could be used because the defendant never went ten years before being convicted of another felony and that based upon the charges for which petitioner was convicted (injury to a public building, perjury, and theft of a debit card), there was no way that all of the prior

---

[3]Unpublished opinion cited for persuasive value. *See* 10th Cir. R. 36.3(B).

offenses could have occurred in one transaction. *Id*., at pp. 174-175. Thus, the testimony made it clear the defendant had at a minimum three and a maximum of five prior convictions. Accordingly, this Court finds Petitioner has failed to establish that the decision of the OCCA was contrary to, or an unreasonable application of *Strickland*. Therefore, he is not entitled to relief on this issue.

### VIII.  TRIAL COURT ERRORS IN INTRODUCTION OF PETITIONER'S PRIOR CONVICTIONS

In his last ground for relief, the petitioner argues the trial court erred by admitting evidence that he had been convicted of two counts in Case No. CRF-89-19 for purposes of enhancing his sentence and by allowing the jury to see prior convictions which had become "stale" under the Oklahoma enhancement statute. Petitioner's only allegation in his habeas petition is that the introduction of these convictions violated state statutes. *See*, Dkt. # 1, at p. 9. Respondent maintains that petitioner's sentencing claim involves only an issue of state law and is, therefore, not reviewable by this Court. In his reply, the petitioner alleges the use of these convictions violated his due process rights under the Fourteenth Amendment. *See*, Dkt. # 14, at p. 9. Additionally, he claims trial counsel was ineffective for failing to investigate or research the prior convictions.

Sentencing enhancement procedures are a matter of state law. *Johnson v. Cowley*, 40 F.3d 341, 345 (10th Cir. 1994). Only where the procedures lead to a violation of the federal constitution is there grounds for habeas relief. The OCCA held the petitioner failed to present sufficient evidence that his burglary and escape from a penal institution arose from

the same transaction. *Rose v. State*, No. F-2007-393, slip op. (Okla. Crim. App. April 21, 2009) at p. 4. Whether the two convictions should be treated as one is an issue of state law and this Court is bound by the OCCA's holding on this question. *See*, *Davis v. Executive Director of Dept. of Corrections*, 100 F.3d 750, 771 (10th Cir. 1996)("Absent some compelling argument that [the state court's] interpretation violates the federal constitution, we will not disturb it."); *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994)("We will not second guess a state court's application or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law.").

While wide discretion is given to a state court's sentencing decisions, relief can be obtained if the petitioner is able to establish that his sentence "exceeds or is outside the statutory limits, or is wholly unauthorized by law." *Haynes v. Butler*, 825 F.2d 921, 923-924 (5th Cir. 1987). Petitioner does not allege, however, that his sentence was outside the statutory limits. Pursuant to 21 OKLA. STAT. tit. 21, § 51.1, the petitioner only had to have two prior felony convictions to have been eligible to receive an enhanced sentence. Thus, petitioner has failed to establish that the sentence he received was outside the statutory limits. Moreover, this Court finds that the sentences were not so outrageous as to amount to cruel and unusual punishment. As a result, this Court finds, pursuant to 28 U.S.C. § 2254(a), no basis for habeas relief on this claim.

## **CONCLUSION**

For the reasons stated herein, Petitioner's Petition for Writ of Habeas Corpus (Dkt. # 1) is hereby denied. Additionally, pursuant to Rule 11 of the Rules Governing Section

2254 cases, this Court hereby denies a certificate of appealability. The Clerk is hereby directed to enter a separate judgment in this matter.

     **IT IS SO ORDERED** this  25th  day of November, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma